UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X

UNITED STATES OF AMERICA,

                                    **MEMORANDUM AND ORDER**

      - against -

                                    17-CR-138(KAM)

RONALD MACK,

                    *Defendant.*

-----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

          Before the court is a motion filed by Ronald Mack ("Mr. Mack"), who is currently serving a 44-month sentence at the low-security prison facility located at the Allenwood Federal Correctional Complex in Allenwood, Pennsylvania ("FCI Allenwood Low"), to modify his prison sentence under the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194.  Mr. Mack moves for a modification on the basis of the global COVID-19 pandemic and his pre-existing medical condition.  The government opposes the motion.  For the reasons herein, Defendant's motion is respectfully DENIED.

## Background

          Mr. Mack pleaded guilty in June 2018 to one count of Hobbs Act robbery conspiracy in violation of 18 U.S.C. § 1951(a), and one count of aggravated identify theft in violation of 18 U.S.C. § 1028A(a)(1), (b), and (c)(4).  (*See* ECF No. 69,

1

Sealed Presentence Investigation Report ("PSR"), ¶¶ 2-3.)  The government alleged that in 2016, Mr. Mack conspired with his co-defendant, David Haskins, to rob two electronics stores, located in Valley Stream, New York and Queens, New York, respectively. (*See id.* at ¶¶ 7-14.)  Mr. Mack and his co-defendant entered the two stores and threatened clerks by stating that they had a concealed gun (which they did not brandish), and the two men then stole property, such as cellphones and tablets, before fleeing. (*See id.*)

After Mr. Mack was arrested for these charged robberies, his cellphone was searched, and it was discovered that earlier in 2016, he took photographs of another individual's identification card and credit card. (*Id.* at ¶ 15.)  Mr. Mack, while working as an emergency medical technician, took the photographs of a victim's identification and credit card while tending to the victim after he had been beaten and robbed in Brooklyn. (ECF No. 104, Memorandum in Opposition to Motion ("Gov't Br."), at 2.)  Mr. Mack used the credit card number to pay two parking tickets, and he sent the photographs of the identification and credit card to his co-defendant, who used the information to purchase jewelry and electronics. (*Id.*)

On March 15, 2017, Mr. Mack and his co-defendant were charged in a five-count indictment with Hobbs Act robbery

2

conspiracy, Hobbs Act robbery, conspiracy to commit access device fraud, attempted access device fraud, and aggravated identify theft.  (*See generally* ECF No. 1, Indictment.)  On June 12, 2018, Mr. Mack pleaded guilty before this court to Hobbs Act robbery conspiracy and aggravated identity theft.  At his change of plea hearing, Mr. Mack allocuted that he entered into an agreement pursuant to which he "knowingly stole phones from the T-Mobile store" while a store clerk was restrained, and that he "knowingly possessed an ID card of the victim, who was a real person, and [he] sent a message via text message of the ID card to buy stuff."  (ECF No. 77, Plea Hearing Transcript, at 18-25.)  The court accepted Mr. Mack's plea of guilty to the two counts.  (*Id.* at 27.)

Mr. Mack was sentenced by this court on November 9, 2018.  The court independently calculated the advisory U.S. Sentencing Commission Guidelines range of imprisonment for the first count of conviction, Hobbs Act robbery conspiracy, as 37 to 46 months; and as 24 months (the statutory minimum) for the second count, for aggravated identity theft.  (Sentencing Transcript ("Sent. Tr."), appended to ECF No. 100, Memorandum in Support of Motion ("Supp. Mem."), at 25.)  Under the aggravated identify theft statute, the sentence for that count was required to run consecutively.  (*Id.*)  The court imposed consecutive sentences of 20 months (Hobbs Act robbery conspiracy) and 24

months (aggravated identify theft) in prison for the two counts,
for a total custodial sentence of 44 months.  (*Id.* at 38.)  The
court found that a downward departure from the advisory
Guidelines range was warranted on the first count, despite the
serious nature of Mr. Mack's offense, because Mr. Mack had shown
remorse, taken steps to prepare for his reentry after his
custodial sentence, and largely complied with the terms of his
pretrial release.  (*Id.* at 37-38.)  For example, Mr. Mack
participated in a program through the Focus Forward Project in
which he took a 12-week course "designed to provide both an
intellectual and emotional outlet for students as they navigate
the stress and uncertainty of the pretrial phase of their
federal cases."  (ECF No. 71, Sentencing Submission, Ex. A.)  In
addition to the custodial sentence, Mr. Mack was also sentenced
to three years of supervised release to follow his term of
imprisonment, ordered to pay $39,445 in restitution, and ordered
to forfeit $13,148.  (Sent. Tr. at 38-41; ECF No. 87, Judgment.)
Mr. Mack began serving his custodial sentence in January 2019,
and he has now been incarcerated for approximately 22 months.
His release date is February 16, 2022.  (Supp. Mem. at 6.)

On September 3, 2020, Mr. Mack filed a *pro se* motion
to reduce his sentence pursuant to the First Step Act.  (ECF No.
97, Motion to Reduce Sentence ("Mot.").)  Counsel then appeared
for Mr. Mack (ECF No. 98, Notice of Appearance), and filed a

4

supplemental memorandum in support of Mr. Mack's motion, (ECF No. 100, Supp. Mem.).  The government opposed the motion.  (ECF No. 104, Gov't Br.)  Counsel for Mr. Mack filed a reply to the government's opposition.  (ECF No. 105, Reply to Memorandum in Opposition ("Reply").)

## Legal Standard

The First Step Act, or the so-called "compassionate release" statute, creates an exception to the general prohibition against modifying a term of imprisonment once it has been imposed.  Pursuant to the First Step Act, defendants may move a court to "reduce" a term of imprisonment, which the court may grant "after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable," upon a finding that "extraordinary and compelling reasons warrant such a reduction[.]"  18 U.S.C. § 3582(c)(1)(A)(i).  The court may only modify a sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  *Id.*

The Second Circuit recently held that district courts have "discretion to consider whether any reasons are extraordinary and compelling," and that "[n]either Application

Note 1(D), nor anything else in the now-outdated version of
[U.S. Sentencing Commission] Guideline § 1B1.13, limits the
district court's discretion" to do so.  *United States v.
Brooker*, No. 19-cr-3218, 2020 WL 5739712, at *7 (2d Cir. Sept.
25, 2020).[1]  A "district court's discretion in this area—as in
all sentencing matters—is broad."  *Id.* at *8.  "The only
statutory limit on what a court may consider to be extraordinary
and compelling is that 'rehabilitation *alone* shall not be
considered an extraordinary and compelling reason.'"  *Id.*
(quoting 28 U.S.C. § 994(t) (emphasis in original, alterations
omitted)).

"The defendant carries the burden of showing that he
or she is entitled to a sentence reduction under the statute."
*United States v. Schultz*, 2020 WL 2764193, at *2 (W.D.N.Y. May
28, 2020) (citing *United States v. Ebbers*, 432 F. Supp. 3d 421,
426 (S.D.N.Y. 2020)).

## Discussion

The government does not dispute that Mr. Mack
exhausted the administrative remedies available to him, because
Mr. Mack filed a request for release with the warden of FCI

---

[1] The government argues that *United States v. Brooker* (a case that both
parties refer to as *United States v. Zullo*) was "wrongly decided," and that
the First Step Act did not "purport to expand the basis for compassionate
release beyond the categories identified by the Sentencing Commission in" the
Guidelines.  (Gov't Br. at 5.)  The government is entitled to make its
argument, but that argument was rejected by the Second Circuit, and this
court is bound to apply Second Circuit law.

Allenwood Low, and after his request was denied, he appealed the warden's denial within the Bureau of Prisons on August 26, 2020. (*See* Gov't Br. at 2-3.)  The question before the court, therefore, is whether Mr. Mack has shown "extraordinary and compelling reasons" that would warrant a reduction of his custodial sentence, after "considering the factors set forth in section 3553(a) to the extent that they are applicable[.]"  18 U.S.C. § 3582(c)(1)(A)(i).

Mr. Mack, who is 33 years old, argues that the global COVID-19 pandemic, combined with his pre-existing heart condition, present "extraordinary and compelling reasons" warranting a reduction of his custodial sentence.  (Mot. at 1.)

## I.   Mr. Mack's Medical Condition and COVID-19

Many of the details of Mr. Mack's heart condition were filed under seal (*see* Supp. Mot. at 2-3), and the court will not discuss his personal medical details at length here.  The court will note that his condition resulted in a visit to the emergency room two years ago, and it may put him at a higher risk of severe complications if he were to contract COVID-19.[2]

---

[2] *See* UChicago Medicine, *What heart disease patients should know about coronavirus (COVID-19)*, University of Chicago, *available at* https://www.uchicagomedicine.org/forefront/coronavirus-disease-covid-19/covid-19-information-for-patients-with-heart-conditions (last accessed Oct. 15, 2020 ) (those with heart disease "are at higher risk for a more severe infection if they get COVID-19," and atrial fibrillation is "commonly triggered by an infection").

Mr. Mack's condition and the ongoing global pandemic thus weigh in favor of his early release from prison.

However, the court does not find that his increased risk presents "extraordinary and compelling reasons" warranting a reduction of Mr. Mack's below-Guidelines sentence for three reasons. First, Mr. Mack is relatively young and otherwise healthy, and would not be at as great a risk as somebody who is older or suffering from more co-morbidities that would place him at a higher risk. Second, he has served only about half of his custodial sentence. Third, COVID-19 has not been spreading rapidly within FCI Allenwood Low.

While Mr. Mack's condition may place him at more risk than a fully healthy person, he is not among the most high-risk individuals. Mr. Mack is 33 years old, and prior to his sentencing, he told the Probation Department that he had "no current or past health problems." (PSR ¶ 67.) During a physical, prior to the onset of the pandemic, he told a prison clinician that he felt "great" and exercised "without discomfort" five to six times per week. (Gov't Br., Ex. A at 3.) There is no reason to doubt that Mr. Mack suffers from a heart condition that can be serious, but the fact that he is relatively young and is otherwise in good health suggests that his risk of dealing with serious complications if he were to

8

contract COVID-19 is not as great as it would be if he were
older.

The court is mindful of this risk, but is also mindful
that the standard to modify a sentence is a finding of
"extraordinary and compelling reasons."  In the cases cited by
Mr. Mack's counsel in which courts have released defendants with
a similar heart condition (Supp. Mot. at 2-3; Reply at 3), the
defendants either (i) were older and suffering from additional
health risks, or (ii) had served well more than half of their
lengthier sentences. *See United States v. Miller*, No. 06-cr-
478, 2020 WL 4732129, at *2-3 (D. Md. Aug. 13, 2020) (defendant
had served 150 months of 262-month sentence and suffered from
"cardiac arrhythmia, atrial fibrillation, prediabetes, and a
possibly cancerous cyst"); *United States v. Walker*, No. 11-cr-
381, 2020 WL 4194677, at *1 (D. Minn. June 26, 2020) (defendant
was "a 77-year old man, suffering from atrial fibrillation,
stage III kidney disease, Crohn's disease, and psoriatic
arthritis"); *United States v. Morris*, No. 99-cr-174, 2020 WL
4344945, at *2 (W.D. Wash. June 22, 2020) (64-year-old defendant
was "obese, suffer[ing] from chronic hypertension, and . . .
atrial fibrillation"); *United States v. Hodges*, No. 04-cr-993,
2020 WL 2935101, at *2 (N.D. Ill. June 3, 2020) (defendant had
served "over ninety percent of the total prison time he would
serve with credit for good behavior").  Unlike these defendants,

Mr. Mack has served approximately half of his custodial sentence,[3] is relatively young, and is otherwise in good health.

The court also finds persuasive that COVID-19 cases at FCI Allenwood Low have been, thankfully, extremely rare.  To date, only one inmate and one staff member at that facility have contracted COVID-19, and no inmates or staff currently have an active case.  (Gov't Br. at 10.)[4]  Mr. Mack argues that COVID-19 cases at the medium-security facility at the Allenwood Federal Correctional Complex, which is a separate facility from FCI Allenwood Low, have "skyrocketed."  (Reply at 1.)  There have been 109 inmates at the medium-security facility who have tested positive for COVID-19, 17 of whom currently have active cases (plus eleven staff members currently with active cases).[5]  There has been no indication, however, that the Bureau of Prisons cannot prevent the outbreak at the medium-security facility from making its way to FCI Allenwood Low.  Indeed, there had been 27 total cases reported among inmates at the medium-security facility at the time of Mr. Mack's supplemental submission on September 30, 2020 (Supp. Mem. at 4), and while those cases have

---

[3] The court will further discuss its consideration of the length of time Mr. Mack has already served below, in connection with its discussion of the Section 3553(a) factors.

[4] *See also* COVID-19 Cases, Federal Bureau of Prisons, *available at* https://www.bop.gov/coronavirus/index.jsp (last accessed Oct. 21, 2020).

[5] COVID-19 Cases, Federal Bureau of Prisons, *available at* https://www.bop.gov/coronavirus/index.jsp (last accessed Oct. 21, 2020).

increased significantly since then, there have been no
additional cases reported at FCI Allenwood Low.  This court and
numerous others have found that the low rate of COVID-19 at FCI
Allenwood Low weighs against modifying a sentence for
individuals who are incarcerated there.  *See, e.g.*, *United
States v. Cooper*, No. 16-cr-567, 2020 WL 4937477, at *2
(S.D.N.Y. Aug. 24, 2020) ("[T]hus far the FCI Allenwood Low
facility appears to have effectively contained the virus.").

The court is concerned for all inmates and respects
the challenges of incarceration during an unprecedented global
pandemic, but the court can only modify a sentence if
"extraordinary and compelling reasons" are presented.  Mr. Mack,
despite his heart condition, is an otherwise healthy 33-year-old
who is incarcerated at a facility that does not currently have
any active confirmed cases of COVID-19.  While his pre-existing
condition weighs in favor of his release, it does so only
slightly, and other considerations weigh against his release.

## II.  The Section 3553(a) Factors

The court must also give consideration to the relevant
sentencing factors set forth in Section 3553(a), which include,
*inter alia*: "the nature and circumstances of the offense," "the
history and characteristics of the defendant," and "the need for
the sentence imposed . . . to promote respect for the law, and

to provide just punishment for the offense[.]"  18 U.S.C. § 3553(a)(1)-(2).

Counsel for Mr. Mack focuses on many of the qualities in Mr. Mack's character that are admirable: that he is a family-oriented man and a good father to his children, that he showed remorse for his crimes, and that he affirmatively took a course to put in place a plan for his reentry even before the court imposed a sentence.  (Supp. Mem. at 5-6.)  The court recognizes all of these qualities in Mr. Mack, just as it did when it imposed a below-Guidelines sentence, as these were among the reasons that the court imposed a 20-month sentence for the first count of conviction, despite an advisory Guidelines range calling for 37 to 46 months.  (*See* Sent. Tr. at 37-38.)

Granting Mr. Mack's release now, after he has served roughly half of his 44-month sentence, would not "promote respect for the law," nor "provide just punishment for the offense[s.]"  18 U.S.C. § 3553(a)(2)(A).  Mr. Mack admitted to entering into a conspiracy to commit a robbery in which a victim was restrained and threatened with violence.  He also abused his position as an emergency medical technician to steal the personal financial information of a vulnerable, injured victim who had just suffered his own violent robbery.  For this latter offense, aggravated identity theft, Mr. Mack faced a mandatory two-year prison term, which was to run consecutively to any

12

other custodial sentence.  18 U.S.C. § 1028A(a)(1), (b).  Mr.
Mack has now served approximately 22 months in prison, which is
less than the mandatory minimum for just one of his two counts
of conviction.  Given that he committed that offense in addition
to conspiring to commit a robbery, his below-Guidelines
custodial sentence should be completed in order for justice to
be served.

        The court is hopeful that Mr. Mack will be able to
make the transition to a law-abiding life when his sentence is
complete, and is optimistic about his future.  No person should
be defined by individual lapses in judgment.  But the court must
promote respect for the law and provide just punishment, and Mr.
Mack's crimes were serious.  An innocent store clerk was
threatened and restrained, and another robbery victim had his
personal information stolen while in a vulnerable condition.
The sentencing factors set forth in Section 3553(a), which the
court considered at the time of sentencing as warranting a total
custodial sentence of 44 months, do not warrant a reduction in
sentence at this time.

## Conclusion

        For the foregoing reasons, Mr. Mack's motion is
respectfully DENIED.  Mr. Mack has not made a showing of
"extraordinary and compelling reasons" warranting a modification

13

of his sentence, nor do the statutory sentencing factors weigh

in favor of a modification.

**SO ORDERED.**

Dated:     Brooklyn, New York
           October 21, 2020

                                        _____/s/_     __ _____
                                        Hon. Kiyo A. Matsumoto
                                        United States District Judge

14